**In re Tracy ROBINSON, Debtor.**

**No. 02–17900–NLJ.**

United States Bankruptcy Court,
W.D. Oklahoma.

Nov. 26, 2002.

Robin M. Meyer, Oklahoma City, Oklahoma, for creditor.

Gary L. Morrissey, Oklahoma City, OK, for debtor.

## ORDER GRANTING MOTION TO RECONSIDER AND REAFFIRMING ORDER GRANTING DEBTOR'S MOTION FOR TURNOVER

NILES L. JACKSON, Bankruptcy Judge.

### BACKGROUND FACTS

On September 26, 2001, Eldorado financed Debtor's purchase of a 1996 Cad-

illac automobile (hereinafter the "Vehicle") in return for which Debtor granted to Eldorado a security interest therein. When Debtor became delinquent on payments under the note, Eldorado exercised its right to self-help repossess the Vehicle pursuant to OKLA. STAT. ANN. tit. 12A, § 1–9–609(a)(1) & (b)(2)(West 2001). Thereafter, Eldorado sent to Debtor a document entitled "Notice After Repossession or Voluntary Surrender" dated July 31, 2002 (hereinafter the "Notice of Sale"). *See id.* §§ 1–2–611—614. The Notice of Sale stated, *inter alia,* that Eldorado had obtained Debtor's Vehicle by repossession and would be offering it for private sale beginning August 13, 2002. *See id.* Further, the Notice of Sale informed Debtor she could still redeem her Vehicle by paying in full the amount due under the contract up until the time the Vehicle was actually sold. *See id.* § 1–9–623. In contemplation of the disposition sale of Debtor's Vehicle, Eldorado applied for and obtained from the Oklahoma Tax Commission a "Repossession Title." This Repossession Title is in Eldorado's name and does not reflect any liens on the Vehicle.

On August 12, 2002, Debtor filed her voluntary chapter 13 petition. That same day, Debtor's attorney notified Eldorado of the bankruptcy filing and provided to Eldorado verification of liability, casualty, and comprehensive insurance coverage on the Vehicle. On August 13, 2002, Debtor's attorney provided similar notice to Eldorado's counsel and requested return of the Vehicle. Eldorado refused to surrender the Vehicle.

On August 15, 2002, Debtor filed her **Motion for Turnover, Motion for Determination of Willful Violation of Automatic Stay, for Costs and Attorney Fees** [ ] seeking return of her Vehicle and dam-

ages against Eldorado for willful violation of the automatic stay under 11 U.S.C. § 362(h) (hereinafter the "Motion for Turnover"). Eldorado responded, asserting the Vehicle was not property of Debtor's bankruptcy estate, thus the automatic stay was not applicable. Eldorado alternatively asked, if the Court determined the stay was applicable, that the Court find it had not violated such stay, and that the Court terminate the stay so Eldorado could retain the Vehicle. At Debtor's request, the Court conducted an expedited hearing on the Motion for Turnover. At the conclusion of the hearing the Court ruled Eldorado's Repossession Title did not convey ownership of the Vehicle to Eldorado. Based upon that finding, the Court granted Debtor's Motion for Turnover and denied both parties' requests for costs.

Subsequently, Eldorado timely filed a **Motion for Reconsideration of [its] Response to Debtor's Motion for Turnover** (hereinafter the "Motion to Reconsider"). The Court conducted a hearing on Motion to Reconsider, at the conclusion of which the Court took the matter under advisement. The Court has reviewed the pleadings and the law applicable to the facts herein, and has considered the arguments of the parties, and rules as follows.

## Contentions of the Parties

### Motion for Turnover

During the hearing on the Motion for Turnover, counsel for Eldorado argued that the fact Eldorado had obtained a Repossession Title meant that ownership of the Vehicle had been transferred to Eldorado. Based upon this argument, Eldorado asserted the Vehicle could not be property of Debtor's bankruptcy estate subject to the automatic stay. According to Eldorado, the nature and extent of Debtor's interest in the Vehicle at the time of bank-

ruptcy filing was limited to the right to redeem under state law.

While counsel for Debtor conceded that Eldorado's pre-petition repossession was legal and proper, he argued that so long as the Vehicle had not been sold prior to Debtor's bankruptcy filing it must be returned to Debtor upon the filing of her Chapter 13. He pointed out that if the Court sustained Eldorado's position, then every creditor who repossessed a vehicle would immediately obtain a Repossession Title and thereby defeat all rights of debtors to bring their vehicles back into the bankruptcy estate.

### Motion to Reconsider

Eldorado's primary evidence in support of its request for reconsideration consisted of unsubstantiated opinion testimony from a representative of the Oklahoma Tax Commission on the effect of payment or non-payment of excise taxes and types of certificates of title in Oklahoma. Eldorado continued to assert ownership of the Vehicle pursuant to its Repossession Title and offered to provide supporting case law to the Court after the hearing.

Debtor's counsel argued that according to Oklahoma law, the title held by Eldorado was simply for the purpose of facilitating the transfer at a subsequent disposition sale.

### Applicable Law

■ In analyzing in the bankruptcy context the relative rights of the parties with respect to repossessed collateral, the Supreme Court's seminal decision in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) is instructive. Much as in this case, in *Whiting Pools* the secured creditor seized the debtor's property pre-petition in order to enforce its lien, but had not sold the property as of the date the debtor filed its

bankruptcy petition.[1] The Supreme Court emphasized the broad scope of 11 U.S.C. § 541(a)(1), noted that it "is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code," noted that 11 U.S.C. § 542 "requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee," and concluded "that the reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization." *Id.*, 462 U.S. at 209, 103 S.Ct. at 2313–2315.

Unlike this case, *Whiting Pools* involved a Chapter 11 reorganization. The Supreme Court expressly limited application of its holding to turnover of repossessed collateral in a Chapter 11 case, stating:

> Our analysis in this case depends in part on the reorganization context in which the turnover order is sought. We express no view on the issue whether § 542(a) has the same broad effect in liquidation [chapter 7] or adjustment of debt [chapter 13] proceedings.

*Id.*, 462 U.S. at 208, 103 S.Ct. at 2315 n. 17. However, numerous courts have applied the *Whiting Pools* analysis to Chapter 13 cases. *See In re Richardson*, 135 B.R. 256, 257 (Bankr.E.D.Tex.1992) (holding that *Whiting Pools* extends to and is applicable in a Chapter 13 case); *Carr v. Security Savs. & Loan Ass'n*, 130 B.R. 434, 436 (D.N.J.1991) (citing *Whiting Pools* in holding that the debtor's car was property of the estate under Chapter 13); *Sutton v.*

*Ford Motor Credit Co.*, 87 B.R. 46, 49 n. 1 (Bankr.S.D.Ohio 1988) (holding that *Whiting Pools* is equally applicable to chapter 13 cases); *Associates Comm'l Corp. v. Attinello (In re Attinello)*, 38 B.R. 609, 610—11 (Bankr.E.D.Pa.1984); *Robinson v. Ford Motor Credit Co.*, 36 B.R. 35, 38 (Bankr. E.D.Ark.1983) (discerning no reason to apply § 542(a) differently in a Chapter 13 proceeding than under Chapter 11). This Court concurs with the courts that have extended *Whiting Pools* to the Chapter 13 context.

■ In applying *Whiting Pools* to the instant case, the Supreme Court's statement that 11 U.S.C. § 542(a) may not apply where a seizure transfers ownership of the property to the creditor becomes relevant. While a determination of whether the debtor's interest is property of the estate is a matter of federal law, *In re Thomas*, 883 F.2d 991, 995 (11th Cir.1989) (citations omitted), the nature and existence of a debtor's interest in property is determined in accordance with state law. *Id.*

Pursuant to Oklahoma law, the transaction at issue, which created a security interest in personal property and occurred after July 1, 2001, comes within the scope of revised UNIFORM COMMERCIAL CODE ("UCC") Article 9 which has been enacted in Oklahoma and became effective July 1, 2001. OKLA. STAT. ANN. tit. 12A, § 1–9–108 (West 2001).[2] The parties do not dispute that Eldorado properly perfected its lien on the Vehicle. OKLA. STAT. ANN. tit. 47, § 1110 (West Supp.2002). Furthermore, it is undisputed that Eldorado's repossession

---

**1.** While *Whiting Pools* involved enforcement by the Internal Revenue Service of its tax lien, the Supreme Court concluded that "[t]he Internal Revenue Code's levy and seizure provisions ... are special procedural devices available to the IRS to protect and satisfy its liens ... and are analogous to the remedies avail-

able to private secured creditors." 462 U.S. at 210–11, 103 S.Ct. at 2316.

**2.** Subsequent references to Oklahoma's version of UCC Article 9 will be indicated by section number only, unless otherwise indicated.

and notice of sale were in compliance with the UCC. Thus, the primary question before the Court is whether the Repossession Title obtained by Eldorado transferred legal ownership of the Vehicle from Debtor to Eldorado.[3]

In order to make that determination, it is necessary to review the repossession procedure. Section 1–9–609 authorizes a secured creditor to self-help repossess its collateral, without a breach of the peace, after there is a default by the debtor. Thereafter, the secured party may dispose of the collateral by sale, lease, license, or other means, so long as every aspect of the disposition is commercially reasonable. § 1–9–610(a) & (b). In order to effect such disposition sale, it may be necessary for the secured creditor to seek transfer of record or legal title pursuant to § 1–9–619. Under this section, the secured creditor prepares a "transfer statement," which is an authenticated record stating:

(1) that the debtor has defaulted in connection with an obligation secured by specified collateral;

(2) that the secured party has exercised its post-default remedies with respect to the collateral;

(3) that, by reason of the exercise, a transferee has acquired the rights of the debtor in the collateral; and

(4) the name and mailing address of the secured party, debtor, and transferee.

(b) A transfer statement entitles the transferee to the transfer of record of all rights of the debtor in the collateral

specified in the statement in any official filing, recording, registration, or certificate-of-title system covering the collateral. If a transfer statement is presented with the applicable fee and request form to the official or office responsible for maintaining the system, the official or office shall:

(1) accept the transfer statement;

(2) promptly amend its records to reflect the transfer; and

(3) if applicable, issue a new appropriate certificate of title in the name of the transferee.

(c) *A transfer of the record or legal title to collateral to a secured party under subsection (b) of this section or otherwise is not of itself a disposition of collateral under this article and does not of itself relieve the secured party of its duties under this article.*

§ 1–9–619 (emphasis added). The Oklahoma Comments to this section add clarification:

[s]ection 9–619(c), which applies when a record transfer occurs prior to the secured party's disposition, states that the transfer of record or a transfer of legal title to collateral to a secured party is not of itself an Article 9 disposition of collateral and does not relieve the secured party of its duties or rights under Article 9.

§ 1–9–619, Oklahoma Comments. According to the UNIFORM COMMERCIAL CODE Comment:

**3.** During the hearing on reconsideration, Eldorado submitted the case of *Mitchell Coach Mfg. Co., Inc. v. Stephens,* 19 F.Supp.2d 1227 (N.D.Okla.1998), and argued this Court should find that Eldorado owns the Vehicle based upon the *Mitchell* court's finding that under Oklahoma law "certificates of title are 'proof of ownership.'" 19 F.Supp.2d at 1233. However, the Oklahoma Court of Appeals has pointed out that *Mitchell* "addresses the issue of perfecting security interests" and "the person who held the paper title in *Mitchell* was in essence a bona fide purchaser for value." *Sutton v. Snider,* 33 P.3d 309, 312 (Okla.Civ.App.2001). Thus, *Mitchell* is distinguishable from this case where perfection is not at issue and Eldorado is not a bona fide purchaser for value.

[u]nder subsection (c), a transfer of record or legal title (under subsection (b) or under other law) to a secured party prior to the exercise of those remedies merely puts the secured party in a position to pass legal or record title to a transferee at foreclosure. A secured party who has obtained record or legal title retains its duties with respect to enforcement of its security interest, and the debtor retains its rights as well. Comment 2.

In fact, according to the UCC, title is immaterial and as to a transaction of the type at issue herein "the provisions of [Article 9] with regard to rights and obligations apply whether title to collateral is in the secured party or the debtor." § 1–9–202. More specifically, "[e]ach provision of this Article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies *irrespective of title to the goods* except where the provision refers to such title." § 2–401 (emphasis added). It is the UCC's "basic policy ... that known purpose and reason should govern interpretation" of the relative rights of the parties rather than "whether or not 'title' to the goods has passed." § 2–401 comment 1.

What, then, are the relative rights of the parties herein? As of the petition date, Debtor's rights included the right to notice of the sale of the repossessed collateral, the right to the surplus proceeds, if any, from the sale of the collateral, and the right to redeem the collateral prior to sale by tendering "fulfillment of all obligations secured by the collateral" and payment of reasonable expenses and attorney fees. §§ 1–9–611, 615(d)(1) & 623. These are the very rights possessed by the debtor in the *Whiting Pools* case,[4] where the Supreme Court found the debtor to be the owner of the property. 462 U.S. at 211, 103 S.Ct. at 2317. The Supreme Court further determined that "[o]wnership of the property is transferred only when the property is sold to a bona fide purchaser ...." *Id.* "Until such a sale takes place, the property remains the debtor's and thus is subject to the turnover requirement of [11 U.S.C.] § 542(a)." *Id.*

Eldorado's interest in the Vehicle, as of the petition date, was therefore limited to enforcement of its security interest or lien, as it is only upon consummation of a disposition sale of the collateral that all of the debtor's rights in the collateral are transferred and the security interest is discharged. § 1–9–617(a)(1) & (2). According to the comment:

> New section 9–610 enlarges on what is transferred by the secured party upon disposition under new section 9–617, in that new section 9–617(a) stipulates that a secured party's disposition of collateral also transfers the all [sic] of debtor's rights in the collateral. New section 9–610 grants, in addition to the right of quiet enjoyment, the rights of possession and title, even if those rights were not held by the debtor.

§ 1–9–610 Oklahoma Comments.[5] Therefore, as of the petition date, Debtor retained an interest in the Vehicle, subject to Eldorado's lien, and this interest was in-

---

**4.** *See United States v. Whiting Pools, Inc.*, 674 F.2d 144, 149–50 & n. 8 (2d Cir.1982) *aff'd* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

**5.** Unless specifically disclaimed or modified, "[a] contract for sale ... or other disposition includes the warranties relating to title, possession, quiet enjoyment, and like which by operation of law accompany a voluntary disposition of property of the kind subject to the contract." § 610(d) & (e). While this focuses on the rights transferred to the buyer, it reflects the retention of such rights by the debtor pending the sale, subject to the lien.

cluded among property of the bankruptcy estate. Based upon the foregoing, the Court reaffirms its Order Granting Debtor's Motion for Turnover.[6]

■ Even though the parties have disagreed on the ownership issue, there is no dispute that Debtor's right of redemption is property of the bankruptcy estate. Eldorado has argued that if Debtor desires to redeem her Vehicle, she must do so in accordance with state law, which would require her to tender "fulfillment of all obligations secured by the collateral" along with payment of certain expenses and fees. § 1–9–623(b). Oklahoma law requires that where, as here, the creditor has accelerated the entire balance of the obligation, the debtor must tender the entire balance. *Id.* at UCC Comment 2. Based upon the cases submitted after the hearing on reconsideration, it appears Eldorado's position is that Debtor's sole remaining remedy consists of her right to redeem the Vehicle in accordance with state law. In support of its position, Eldorado submitted *McCarn v. WyHy Federal Credit Union (In re McCarn)*, 218 B.R. 154 (10th Cir. BAP 1998); *In re Jackson*, 133 B.R. 541 (Bankr. W.D.Okla.1991); and *Jim Walter Homes, Inc. v. Spears (In re Thompson)*, 894 F.2d 1227 (10th Cir.1990). In the *McCarn* and *Thompson* cases, the courts made the distinction between the right to cure a default under 11 U.S.C. § 1322(c)(1), which is available to a debtor until such time as the property is sold at a foreclosure sale, and the post-foreclosure-sale statutory right of redemption. *McCarn*, 218 B.R. at 162; *Thompson*, 894 F.2d at 1230–31. In *Jack-*

son, the court concluded that § 108(b) operates to extend the time in which a debtor can exercise his or her state law right of redemption. 133 B.R. at 546–47.

However, pursuant to *McCarn* and *Thompson*, in this case in which the disposition sale of the collateral has not yet occurred, Debtor is not limited to the state law right of redemption and thus does not need any extension of the time in which to exercise such right. Debtor also retains the rights conferred upon her by 11 U.S.C. § 1322(b)(2) to modify the rights of holders of secured claims, and by 11 U.S.C. § 1322(b)(3) to cure the default and thereby negate the effect of Eldorado's acceleration clause. *Anderson v. Associate Comm'l Corp. (In re Anderson)*, 29 B.R. 563 (Bankr.E.D.Va.1983) (citation omitted). As so cogently expressed by the *Anderson* court:

> [t]he right to cure default and reinstate an accelerated note is granted by federal bankruptcy law and cannot be frustrated by the law of any state. *In re Taddeo*, 685 F.2d 24, 28 (2d Cir.1982). By allowing debtors to cure defaults in cases in which there is still a right of redemption under state law, this section furthers the intent of Chapter 13 which is to facilitate debtor rehabilitation while protecting the rights of creditors. *Taddeo* at 29; .... Other courts with factual situations identical to that found in the instant case are in accord..... In each of these cases the courts concluded that the debtor's right to redeem their property was a part of the bankruptcy estate.

*Anderson*, 29 B.R. at 565 (some citations omitted). Debtor's proposed Chapter 13

---

**6.** The Court is aware of two Eleventh Circuit cases, *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280 (11th Cir.1998) and *Bell–Tel Federal Credit Union v. Kalter (In re Kalter)*, 292 F.3d 1350 (11th Cir.2002) that would support a different result in this case. However, based upon the cogent analysis of these cases set forth in the article entitled

*Turnover Rights Revisited (or Repudiated Sub Silentio?): Who "Owns" Collateral Repossessed by a Secured Creditor?*, BANKR. L. LETTER, Aug. 2002, *available at* 2002 WL 1786081, this Court is convinced the reasoning in *Lewis* and *Kalter* is flawed, and declines to follow them.

Plan complies with the applicable provisions of the Bankruptcy Code, preserves Eldorado's lien, and provides for pro rata payments of Eldorado's allowed secured claim with interest. According to the latest information available to the Court, the Vehicle is insured and Debtor is current on her payments to the Chapter 13 Trustee. Eldorado has not argued that it is not adequately protected, and Debtor has represented that the Vehicle is necessary for her to keep her job. Thus, for the reasons so persuasively articulated by the *Anderson* court, this Court concludes that Debtor's proposed plan is a permissible method of retaining her Vehicle in Chapter 13.

## DECISION

Eldorado's Motion to Reconsider is granted. The Court having duly reconsidered, finds that Debtor retains an interest in the Vehicle subject to Eldorado's lien, and the Vehicle therefore is included among the property of the bankruptcy estate. Based upon that finding, the Court reaffirms its prior Order Granting Debtor's Motion for Turnover. This ruling will necessitate re-issuance of the certificate of title to reflect Debtor as the legal owner of the Vehicle and Eldorado as the lienholder.[7]

Further, the Court concludes that Debtor is entitled to exercise the rights conferred upon her by 11 U.S.C. § 1322(b), and that Debtor's proposed plan is a permissible method of retaining her Vehicle in Chapter 13, subject to confirmation of her proposed plan which is currently set for hearing December 17, 2002.

---

7. The Court is prepared to issue any order necessary to facilitate returning the parties to the *status quo ante.*