In re Dorothy L. ESTIS, Debtor.

Dorothy L. Estis, Plaintiff,

v.

Credit Union of Johnson County, Defendant.

Bankruptcy No. 03–21119.
Adversary No. 03–6121.

United States Bankruptcy Court, D. Kansas.

July 13, 2004.

---

Thomas M. Martin, Kansas City, MO, for Creditor.

George A. Wheeler, Kansas City, MO, for Debtor.

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

ROBERT D. BERGER, Bankruptcy Judge.

This matter is before the Court on defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. # 6). Plaintiff has filed a response (Doc. # 10), and the Defendant has filed its response (Doc. # 17). In this action, the plaintiff alleges the defendant willfully violated the 11 U.S.C. § 362[2] automatic stay by selling a vehicle that was property of the plaintiff's bankruptcy estate after receiving due notice of the plaintiff's pending Chapter 13 petition.[3] In its motion, the defendant contends that as a matter of law, it did not violate the automatic stay because the vehicle in question was never property of the plaintiff's bankruptcy estate. For the following reasons, the defendant's motion is denied.

## I. BACKGROUND

The following uncontroverted facts concerning the plaintiff's claims are relevant to the disposition of the defendant's motion:

On January 5, 2000, the plaintiff signed a note and security agreement for the purchase of a vehicle from the defendant. After the plaintiff's subsequent default on the note and security agreement, the de-

---

1. The plaintiff appears by George A. Wheeler of Kansas City, Missouri, and Rose M. Quinn of Kansas City, Kansas. The defendant appears by Thomas M. Martin and Phillip R. Anderson of Kansas City, Missouri.

2. Subsequent statutory references are to the Bankruptcy Code ("the Code"), 11 U.S.C. § 101, et seq., unless otherwise noted.

3. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 157(b)(2) (core proceeding).

fendant filed a lawsuit in the District Court of Johnson County, Kansas, asking for a money judgment and immediate possession of the vehicle. The defendant received default judgment on December 19, 2002.[4] The defendant repossessed the plaintiff's vehicle on March 14, 2003, and informed the plaintiff of its intent to sell the property. On March 25, 2003, the defendant applied for a repossession title. The plaintiff filed her petition for Chapter 13 protection one day later, on March 26, 2003. On March 31, 2003, the Kansas Department of Revenue issued a repossession title to the defendant. On or about March 26, 2003, the Bankruptcy Clerk's office mailed a Notice of Chapter 13 bankruptcy that the defendant received. In addition, an amended Notice of Chapter 13 bankruptcy was mailed to the defendant on or about March 31, 2003. The defendant filed its Proof of Claim as secured in the plaintiff's bankruptcy proceeding on April 7, 2003, with the vehicle in question described as collateral. Seven days later, on April 14, 2003, after noticing the plaintiff of its intent to sell the vehicle, the defendant sold the vehicle by private sale.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment[5] is appropriate if the moving party demonstrates that there is "no genuine issue of material fact" and that it is "entitled to a judgment as a matter of law."[6] The substantive law identifies which facts are material.[7] A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant.[8] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[9] This Court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor.[10] Essentially, this Court performs the threshold inquiry of determining whether a trial is necessary.[11] Here, where the relevant facts are uncontroverted, the Court need only determine whether the defendant is entitled to judgment as a matter of law.

## III. DISCUSSION

Pursuant to section 362 of the Bankruptcy Code, a debtor's petition operates as a stay, applicable to all entities, of any act to exercise control over property of the estate[12] and any act to create, perfect, or enforce any lien against property of the estate.[13] Individuals injured by willful violations of the automatic stay are entitled to "recover actual damages, in-

---

4. An Order Nunc Pro Tunc granting replevin of the vehicle on December 19, 2002, by the District Court of Johnson County, Kansas, was entered on September 28, 2003.

5. Although characterized as an alternative motion, the defendant and the plaintiff both present their arguments to the Court within the summary judgment framework, including the presentation of matters outside the pleadings. Accordingly, the motion shall be treated as one for summary judgment pursuant to FED. R. BANKR.P. 7012.

6. FED. R. BANKR.P. 7056 and FED.R.CIV.P. 56(c).

7. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

8. *Id.*

9. *Id.*

10. *Id.* at 249, 106 S.Ct. 2505.

11. *Id.* at 250, 106 S.Ct. 2505.

12. *See* 11 U.S.C. § 362(a)(3).

13. *See* 11 U.S.C. § 362(a)(4).

cluding costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[14] In its motion for summary judgment, the defendant only contends that the property described in the plaintiff's complaint was at no time property of the plaintiff's bankruptcy estate. Therefore, the Court will limit its inquiry to determining whether the subject vehicle became property of the debtor's bankruptcy estate on the date her petition was filed.

■ At the moment the debtor filed her bankruptcy petition, an "estate" was created that included "all legal and equitable interests of the debtor in property as of the commencement of the case" wherever located and by whomever held.[15] This included property that was subject to a lien and upon which the debtor's right to redeem has not been foreclosed upon under applicable nonbankruptcy law.[16] Therefore, the threshold question is whether the subject vehicle became part of the plaintiff's bankruptcy estate as a matter of law upon the filing of her bankruptcy petition. If the vehicle became part of the plaintiff's bankruptcy estate because she had a legal or equitable interest in it, the defendant was bound to comply with the automatic stay provisions of section 362. However, if the vehicle did not become part of the plaintiff's bankruptcy estate because her interest in the vehicle was terminated prior to the filing of her petition, the defendant was not required to turn over the vehicle and could not have violated the automatic stay by selling property in which the bankruptcy estate had no interest.

In its proof of claim, the defendant claims it is owed an amount secured by the same vehicle it claims is not property of the plaintiff's bankruptcy estate. Section 506(a) states "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." Since the defendant alleges in its proof of claim that it holds a secured claim collateralized by the vehicle in question, then by implication defendant recognizes that the vehicle is property of the plaintiff's bankruptcy estate.

■ This Court must determine whether the plaintiff had a legal or equitable interest in the repossessed vehicle as of the commencement of her case and, if so, whether this interest was sufficient to render the automobile property of the estate subject to turnover. Whether the plaintiff's interest in the repossessed vehicle was included in her bankruptcy estate pursuant to section 541 is ultimately a matter of federal law. However, because state law defines and creates property interests, this Court must look to state law to determine what property interest, if any, the plaintiff had in the subject vehicle in order to decide if it was bankruptcy estate property on the date of her bankruptcy petition.[17]

In the present case, the defendant contends that the repossession title applica-

---

14. *See* 11 U.S.C. § 362(h).

15. 11 U.S.C. § 541(a)(1).

16. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) ("[T]he reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization.").

17. *See In re Wise*, 346 F.3d 1239, 1241–42 (10th Cir.2003); *see also In re Stat–Tech Intern. Corp.*, 47 F.3d 1054, 1057 (10th Cir. 1995) (citing *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

tion presented to state authorities pursuant to Kansas law the day before the plaintiff filed her petition for Chapter 13 protection, and the repossession title subsequently issued, divested the plaintiff of any ownership in the vehicle. To support its contention, the defendant cites language in K.S.A. § 8–135(c)(2) that states "[w]hen the ownership of any vehicle passes by operation of law, or repossession upon default of a lease, security agreement, or executory sales contract, the person owning such vehicle, upon furnishing satisfactory proof to the county treasurer of such ownership, may procure a certificate of title to the vehicle." The defendant reasons that the phrase "the person owning such vehicle" in K.S.A. § 8–135(c)(2) unambiguously indicates that repossession passes title to the party in possession of the vehicle. This Court, however, believes that although K.S.A. § 8–135(c)(2) addresses certain rights a repossessing entity may have after repossession, it does not answer the salient issues presented by this inquiry: at what point in the repossession process is a debtor's interest in a repossessed vehicle no longer sufficient to bring the vehicle within a bankruptcy estate?

In Kansas, the law regarding the repossession and disposition of secured collateral and the parties' relative rights thereto is contained in the Revised Uniform Commercial Code ("UCC") Article 9, as adopted in K.S.A. § 84–9–101, et seq. Although Kansas courts have not considered the issues presented in this proceeding, this Court is not without guidance. Several federal courts, including the Bankruptcy Appellate Panel of the Tenth Circuit ("BAP") in an unreported opinion,[18] have considered whether a vehicle repossessed prior to the commencement of a bankruptcy proceeding is property of a debtor's bankruptcy estate.[19] The BAP, in In re Picard,[20] considered vehicle repossession prior to the petition filing date under Wyoming's version of UCC Article 9, which included a right of redemption prior to the disposition or contract for disposition of the repossessed vehicle.[21] Despite state law providing for the issuance of a new certificate of title in the repossessing party's name upon its application and after repossession of the vehicle,[22] the BAP concluded that a debtor's right to redeem a repossessed vehicle on the date a bankruptcy case is filed is an "inescapable" interest in the vehicle that brings it within a debtor's bankruptcy estate.[23] This Court also believes that the right of redemption as provided under Kansas law is an inescapable interest in a repossessed vehicle sufficient to bring it within a debtor's bankruptcy estate.

Additionally, like the bankruptcy courts for the Western District of Oklahoma, in

---

**18.** This Court considers unpublished Tenth Circuit BAP decisions as persuasive authority with respect to material issues that have not been addressed in a published Tenth Circuit BAP decision.

**19.** See In re Moffett, 356 F.3d 518 (4th Cir. 2004); In re Kalter, 292 F.3d 1350 (11th Cir. 2002); In re Lewis, 137 F.3d 1280 (11th Cir. 1998); In re Picard, 302 B.R. 112, 2003 WL 21643436 (10th Cir. BAP 2003) (unreported); In re Elliott, 214 B.R. 148 (6th Cir. BAP 1997); In re Sanders, 291 B.R. 97 (Bankr. E.D.Mich.2003); In re Robinson, 285 B.R.

732 (Bankr.W.D.Okla.2002); Motors Acceptance Corporation v. Rozier, 597 S.E.2d 367 (2004).

**20.** In re Picard, 302 B.R. 112 (10th Cir. BAP 2003) (unreported).

**21.** Id., 2003 WL 21643436, at *3.

**22.** Id., at *2 (citing Wyo. Stat. Ann. § 31–2–104(c) (Michie 2002)).

**23.** Id., at *3; see also In re Elliott, 214 B.R. 148, 152–53 (6th Cir. BAP 1997).

*In re Robinson,*[24] and the Eastern District of Michigan, in *In re Sanders,*[25] this Court finds further evidence of a debtor's interest in a repossessed vehicle within other provisions of Revised Article 9. Both the court in *Robinson* and the court in *Sanders* considered similar factual scenarios under Revised UCC Article 9 as adopted in Oklahoma and Michigan, respectively. This Court joins the courts in *Robinson* and *Sanders* in concluding that "repossession is merely a device to collect on the creditor's claim, and that therefore repossession does not transfer ownership to the creditor."[26] Specifically, like the court in *Sanders,* this Court finds evidence of a debtor's continuing ownership interest in a repossessed vehicle throughout Revised Article 9 as adopted in Kansas.[27] Salient to this Court's analysis, K.S.A. § 84–9–202, captioned "Title to collateral immaterial," provides that, with certain exceptions, "the provisions of [Revised Article 9] with regard to rights and obligations apply whether title to collateral is in the secured party or the debtor." Because title is immaterial, the defendant's contention that the language of K.S.A. § 8–135(c)(2) unambiguously places ownership of a repossessed vehicle singularly in the defendant is suspect, and this Court looks to Revised Article 9 to determine the relative rights of the defendant and plaintiff to the repossessed vehicle.

Under K.S.A. § 84–9–623, a debtor has the right to redeem collateral at any time before the secured party has disposed of it. If the defendant "owned" the plaintiff's vehicle upon its application for a "repossession title," "it would be unnecessary and inappropriate to give the debtor the right of redemption."[28] In addition, K.S.A. § 84–9–610(c), captioned "Purchase by secured party," provides that a secured party may "purchase collateral" under certain circumstances after default. "If the creditor were already the owner, this provision would be unnecessary."[29] Another section, K.S.A. § 84–9–615(d)(1), provides that the secured creditor must "account to and pay a debtor for any surplus...." "If the creditor owned the repossessed vehicle, it would be unnecessary and inappropriate to give the debtor the right to receive any surplus."[30] Finally, K.S.A. § 84–9–619(c), titled "Transfer not a disposition; no relief of secured party's duties," explicitly states that "[a] transfer of the record or legal title to collateral to a secured party under subsection (b) *or otherwise* is not of itself a disposition of collateral under this article...."[31] Therefore, the fact that the defendant applied for and

**24.** *Robinson,* 285 B.R. at 737–38.

**25.** *In re Sanders,* 291 B.R. at 99–102.

**26.** *Id.* at 101 (citing *Robinson,* 285 B.R. at 737; *Turner v. DeKalb Bank (In re Turner),* 209 B.R. 558, 566 (Bankr.N.D.Ala.1997)); *see also Motors Acceptance Corporation v. Rozier,* 597 S.E.2d 367 (2004) ("The UCC's statutory framework makes clear that repossession alone is not enough to extinguish the debtor's ownership in the collateral ...").

**27.** The court in *Sanders,* in a well-reasoned and persuasive opinion, found evidence of a debtor's continued ownership interest in a repossessed vehicle throughout the Revised UCC Article 9 as adopted in M.C.L.A. §§ 440.9623, 440.9611(2) and 440.9614, 440.9610(1), 440.9615(4)(a), 440.9610(3), 440.9617, 440.9620(1), 440.9621 and 440.9622, 440.9202, and 440.9625. *Id.* at 100–01.

**28.** *Id.*

**29.** *Id.*

**30.** *Id.; see also Moffett,* 288 B.R. at 728 ("Such a right is completely inconsistent with the notion that the debtor has no form of property interest in the collateral or at best only bare legal title.").

**31.** Emphasis added.

ultimately received a "repossession title" has little, if any, relevance to this Court's analysis. If bare legal title held by a debtor is insufficient to bring property into the bankruptcy estate, then bare legal title to property held by a creditor is insufficient to remove property from the estate.[32]

■ What legal effect, then, if any, did the "repossession title" issued to the defendant have upon the plaintiff's rights? As repossession of a vehicle is often a contested, if not contentious, event, cooperation between a creditor and a debtor in transferring a certificate of title is often subverted by countervailing theories of legal rights. A "repossession title" provides nothing more than a mechanism by which a creditor may pass legal or record title to a transferee upon exercising its remedies under the UCC.[33] Because the plaintiff retained legal and equitable title in the repossessed vehicle on the date of her Chapter 13 petition and the defendant's "repossession title" was merely a mechanism for passing legal title upon exercising remedies under the UCC, the Court concludes that the repossessed vehicle became part of the plaintiff's bankruptcy estate pursuant to section 541 and that the defendant needed relief from the automatic stay prior to any disposition of the repossessed vehicle.[34]

This Court takes note of Eleventh Circuit decisions finding that a debtor in bankruptcy held no interest in a vehicle repossessed prior to the commencement of the bankruptcy proceeding. Those decisions, *In re Lewis*[35] and *In re Kalter*,[36] consider the UCC Article 9 as adopted by Alabama and Florida law, respectively, and conclude that the UCC right of redemption was an intangible interest and alone was insufficient to render a debtor's vehicle property of the bankruptcy estate where the vehicle was repossessed prior to the commencement of the bankruptcy case. Specifically, the defendant here cites the Eleventh Circuit's analysis in *Kalter* and argues that this Court should adopt its conclusions.

In *Kalter*, the Eleventh Circuit held that after repossession, a debtor's intangible right of redemption is not an interest in the repossessed property itself and that the UCC does not establish who owns repossessed property. Instead, the Eleventh Circuit determined ownership by looking to a Florida certificate-of-title statute with language similar to K.S.A. § 8–135(c), which it held established ownership of a repossessed vehicle in the repossession party.[37] However, *Kalter* was decided under former Article 9, which did not include the new section 9–619(c), adopted in Kansas as K.S.A. § 84–9–619(c), which explicitly states that "[a] transfer of the rec-

---

**32.** *Accord In re Crouch C Stores, Inc.,* 120 B.R. 178 (Bankr.D.Kan.1990) (holding that bare legal title alone was insufficient to bring property within the bankruptcy estate).

**33.** *See* Official Comment (2) to K.S.A. § 84–9–619 ("[A] transfer of record or legal title (under subsection (b) or under other law) to a secured party prior to the exercise of those remedies merely puts the secured party in a position to pass legal or record title at foreclosure.").

**34.** *See In re Elliott,* 214 B.R. 148 (6th Cir. BAP 1997) ("After receipt of a repossession

title, but before sale of the collateral, a secured party cannot exercise unrestricted control over the repossessed vehicle, due to the right of redemption, and accordingly does not have true 'ownership' rights, despite holding a repossession title.").

**35.** 137 F.3d 1280 (11th Cir.1998).

**36.** 292 F.3d 1350 (2002).

**37.** *Id.* at 1359 (citing Fla. Stat. § 319.28(1)(a) and (2)(b)).

ord or legal title to collateral to a secured party under subsection (b) *or otherwise* is not of itself a disposition of collateral under this article...."[38] The addition of section 9–619(c) under Revised Article 9 calls into question whether *Kalter* would be applicable under Kansas law, as the section likely overrides any effect title-clearing statutes would have on ownership after repossession by a secured creditor.[39] Even if Revised Article 9 would not materially change the Eleventh Circuit's disposition in *Kalter*, this Court is not bound by the decision and disagrees with the legal conclusions reflected in both *Lewis* and *Kalter*. The mere repossession of the automobile does not alter a debtor's interest in the property.

The Fourth Circuit, in *In re Moffett*,[40] is the only other Circuit court to consider a debtor's rights in a vehicle repossessed prior to the commencement of bankruptcy proceedings. *Moffett*, however, offers little additional guidance. In *Moffett*, the Fourth Circuit avoided determining whether a vehicle repossessed prior to the petition filing date was property of a debtor's bankruptcy estate. Instead, citing *Kalter* and *Lewis*, it concluded that the debtor's right of redemption, which it held was "unquestionably" property of the debtor's bankruptcy estate, was sufficient *when exercised* through a Chapter 13 plan of reor-

ganization to require the secured creditor to comply with the section 362 automatic stay and to return the vehicle to a debtor pursuant to the turnover provisions of section 542.[41] The Fourth Circuit concluded that since section 1322(b)(2) permits debtors to modify the rights of secured claims holders, and section 1322(b)(3) allows debtors to cure their defaults, a debtor could choose to exercise his or her right of redemption over the duration of a Chapter 13 plan.

However, *Moffett* is unclear in that it does not explain how section 1322(b)(2) may be exercised to modify the rights of a secured claim holder without first establishing that a secured claim exists. In both *Kalter* and *Lewis*, which the Fourth Circuit cited to support its conclusion that the statutory right to redeem a vehicle is part of a debtor's bankruptcy estate, the Eleventh Circuit held that the UCC right of repossession was an intangible right which did not constitute an actual interest in repossessed property sufficient to bring the property into the bankruptcy estate.[42]

If a statutory right to redeem repossessed property is not an interest sufficient to bring the repossessed property into the bankruptcy estate, then section 506(a), under which a party is secured to the extent it has "[a]n allowed claim ... secured by a lien on *property in which the*

---

**38.** Emphasis added.

**39.** *See Motors Acceptance Corporation v. Rozier,* 597 S.E.2d 367 (2004) (distinguishing *Kalter* and *Lewis* and concluding that Revised Article 9, as adopted in Georgia, makes clear that the Georgia Motor Vehicle Certificate of Title Act does not alter the substantive rights of the parties); *see also* G. Ray Warner, *Repossession Titles and Turnover Under Revised Article 9,* 23 Am. Bankr.Inst. J. 22, 23 (2004) ("[T]he addition of new subsection 9–619(c) arguably overrides the title-clearing provisions of the motor vehicle statutes relied upon in [*Kalter* and *Lewis*].").

**40.** 356 F.3d 518 (4th Cir.2004).

**41.** 356 F.3d at 523–24.

**42.** *See Lewis,* 137 F.3d at 1285 ("[A] bankruptcy estate's only interest in the repossessed automobile—a bare right of redemption—failed to render the automobile 'property of the estate' under 11 U.S.C § 541(a)(1) and subject to turn-over under 11 U.S.C. § 542(a)"); *Kalter,* 292 F.3d at 1356 ("[T]he Debtors' mere rights to redeem do not bring the vehicles in to the Debtors' bankruptcy estates under Florida law").

*estate has an interest ...,"* is inapplicable.[43] In other words, if the bankruptcy estate does not have an actual interest in repossessed property sufficient to bring the vehicle within the bankruptcy estate, there is no secured claim to modify and, as a result, it would be necessary for the debtor-in-possession to tender the full amount required under a right to redeem before the bankruptcy estate would reacquire an interest in repossessed property.[44] Consequently, without first knowing the nature of a debtor's legal or equitable interest in a repossessed vehicle, the Fourth Circuit's holding does not aid in the disposition of this matter. However, the Fourth Circuit did not explicitly adopt the conclusion in both *Kalter* and *Lewis* that the right to redeem is an intangible right that does not give rise to an actual interest in the repossessed property, and its holding in *Moffett* is not necessarily incongruous with the determination that a debtor's right to redeem, along with the other protections and rights afforded by the UCC, are actual interests in repossessed property sufficient to bring it within the estate.

Despite the conflict between courts, any residual doubt that the repossessed vehicle became part of the plaintiff's bankruptcy estate upon the commencement of her bankruptcy case is laid to rest upon review of the Supreme Court's holding in *United States v. Whiting Pools, Inc.*[45] In *Whiting Pools*, the Supreme Court considered the authority of a Chapter 11 debtor-in-possession ("DIP"), under section 542 of the Code, to demand the turnover of estate property that had been seized by the IRS to enforce its lien prior to the commencement of the Chapter 11 proceeding.[46] Under section 542, an entity in possession of bankruptcy estate property that the trustee can use under section 363 is required to turn that property over to the trustee.[47] Significantly, the Supreme Court held that property seized by a secured creditor prior to a debtor's date of filing and in which the debtor retains a right of redemption is property of the debtor's bankruptcy estate and subject to the turnover provisions of section 542.[48] Although the Supreme Court's holding was limited to the context of a Chapter 11 proceeding, this Court joins the growing number of courts applying *Whiting Pools* to Chapter 13 cases.[49] Like the debtor in *Whiting Pools*, the plaintiff here retained a right of redemption in the property seized by the defendant before the date of her petition for bankruptcy relief and, like the repossessed property in *Whiting Pools*, the repossessed vehicle became property of her bankruptcy estate on that date.

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that the plaintiff's vehicle became property of her bankruptcy estate upon the commencement of her Chapter 13 case. The defendant's Motion for Summary Judgment is therefore denied. In light of this Court's conclusions, the defendant is hereby directed to show cause why

---

43. Emphasis added.

44. *See Warner, supra*, n. 38 at 55 ("If repossession replaced the debtor's property interest in the collateral with a mere intangible right, then § 1322(b)(2) would not apply.").

45. 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

46. *Id.*

47. *Id.*

48. *Whiting Pools*, 462 U.S. at 209, 103 S.Ct. 2309.

49. *See In re Robinson*, 285 B.R. 732 (Bankr. W.D.Okla.2002) (compiling cases); *see also In re Sanders*, 291 B.R. 97 (Bankr.E.D.Mich. 2003).

judgment should not be entered in favor of the plaintiff and an evidentiary hearing on damages set forthwith.