PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In re: MARLENE MOFFETT,
                    *Debtor,*

TIDEWATER FINANCE COMPANY,
                    *Plaintiff-Appellant,*          No. 03-1279

v.

MARLENE MOFFETT,
                    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-02-1318, BK 02-82020-SSM)

Argued: December 3, 2003

Decided: January 23, 2004

Before WILKINSON and NIEMEYER, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge Niemeyer and Senior Judge Hamilton joined.

## COUNSEL

**ARGUED:** James Robert Sheeran, TIDEWATER FINANCE COM-
PANY, Virginia Beach, Virginia, for Appellant. Robert Ross Weed,

LAW OFFICE OF ROBERT R. WEED, Alexandria, Virginia, for Appellee.

---

**OPINION**

WILKINSON, Circuit Judge:

Appellant Tidewater Finance Company lawfully repossessed Marlene Moffett's vehicle because of Moffett's failure to make her scheduled payments, and shortly thereafter Moffett filed a petition for Chapter 13 reorganization. Moffett demanded possession of the vehicle pursuant to the automatic stay and turnover provisions of the Bankruptcy Code, but Tidewater Finance sought relief from these provisions. The bankruptcy court, after ensuring that Tidewater Finance's security interest in the vehicle was adequately protected in the bankruptcy plan, ordered Tidewater Finance to return the vehicle to Moffett. The district court affirmed that decision. Because we find that Moffett's right to redeem the vehicle under Virginia law was part of her bankruptcy estate, and because the reorganization plan in this case provides for the exercise of her right of redemption, we affirm. To hold otherwise would deprive Moffett and other debtors of the rights and protections afforded to them by the Bankruptcy Code, and it would thereby undermine their chances for successful financial rehabilitation.

I.

On January 22, 2001, Marlene Moffett purchased a used 1998 Honda Accord from Hendrick Honda in Woodbridge, Virginia. Moffett agreed to pay $20,024.25 with interest in 60 monthly installments, and Hendrick Honda retained a security interest in the vehicle. Under the purchase contract and Virginia state law, Hendrick Honda had the right to repossess the vehicle in the event of default, subject to Moffett's right to redeem it. *See* Va. Code §§ 8.9A-609, 623 (2003). Hendrick Honda assigned its rights under the purchase agreement to Tidewater Finance Company, which subsequently perfected its security interest. According to the bankruptcy court, the automobile was Moffett's only means of traveling the forty miles from her home to her workplace at the Federal Emergency Management Agency.

Moffett made her payments in timely fashion for approximately one year. Because Moffett failed to make her monthly payments in March and April 2002, however, Tidewater Finance lawfully repossessed the vehicle on the morning of April 25, 2002. Later that day, Moffett filed for voluntary Chapter 13 reorganization. On May 1, 2002, Moffett's attorney notified Tidewater Finance of Moffett's bankruptcy filing and demanded return of the vehicle, according to the Bankruptcy Code's automatic stay and turnover provisions. *See* 11 U.S.C. §§ 362(a), 542(a) (2003).

Tidewater Finance in turn filed a motion for relief from the provisions, claiming that its repossession of the automobile stripped Moffett and the bankruptcy estate of any interests in the vehicle, except bare legal title and an intangible right of redemption. It therefore asked the bankruptcy court to terminate the automatic stay under 11 U.S.C. § 362(d) so that it could sell the vehicle. Tidewater Finance took no steps to dispose of the vehicle or to apply for a new certificate of title.

The bankruptcy court denied Tidewater Finance's motion for relief. The court explained that Tidewater Finance's repossession did not terminate Moffett's equitable interests in the vehicle under Virginia law, such as her right to redeem the vehicle. This right, the court held, became part of Moffett's bankruptcy estate. The bankruptcy court therefore ordered the vehicle returned to Moffett.

However, the bankruptcy court first required adequate protection in the reorganization plan for Tidewater Finance's security interest. The modified plan provided for full payment of the amounts due under the contract — including the delinquent payments — over the course of the plan. Tidewater Finance complied with the orders and turned over the car, but filed a notice of appeal on June 27, 2002.

The district court heard Tidewater Finance's appeal of the bankruptcy court's orders. Tidewater Finance claimed that Moffett did not have any interests in the car other than bare legal title and an intangible right of redemption. The district court, however, ruled that Moffett retained the statutory right of redemption. Therefore, the court held, the bankruptcy court properly required Tidewater Finance to

turn over the repossessed vehicle once it was adequately protected in the reorganization plan. Tidewater now appeals that ruling.[1]

## II.

Once a debtor files for Chapter 13 bankruptcy, the Bankruptcy Code automatically stays any act by parties to exercise control over, or to enforce a pre-petition or post-petition lien against, property of the bankruptcy estate. 11 U.S.C. §§ 362(a)(3)-(5) (2003). Any entity that possesses property that the bankruptcy trustee may use, sell, or lease under the Bankruptcy Code is required to turn over or account for the property. *Id.* § 542(a). Before requiring a party to turn over property, however, courts must ensure that the party's interest in the property is adequately protected. *Id.* §§ 362(d)(1), 363(e). The central question here is whether Tidewater Finance and the repossessed vehicle are subject to these automatic stay and turnover provisions of the Bankruptcy Code.

## A.

We must first determine the nature of Moffett's property interests in the repossessed vehicle, and whether those interests became part of her bankruptcy estate. A debtor's bankruptcy "estate" is automatically created at the time she files for bankruptcy. It broadly includes, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1). The inclusive scope of the bankruptcy estate reflects the desire of Congress to facilitate the financial rehabilitation of debtors. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203-04 (1983). Yet, while federal law defines in broad fashion what property interests are included within the bankruptcy estate, state law determines the nature and existence of a debtor's rights. *Butner v. United States*, 440 U.S. 48, 54-55 (1979); *Universal Coops., Inc., v. FCX, Inc. (In re FCX, Inc.)*, 853 F.2d 1149, 1153 (4th Cir. 1988). We therefore must look

---

[1] This Court has previously denied Moffett's motion to dismiss the appeal as moot. *See Order Den. Mot. to Dismiss as Moot*, Sept. 9, 2003. We likewise deny the motion of Tidewater Finance to certify the questions in this appeal to the Virginia Supreme Court. *See Appellant's Mot. to Certify*, July 25, 2003.

to Virginia law in determining the nature of Moffett's interests in the vehicle upon repossession.

Because we deal here with a debtor's default on a purchase agreement with a secured creditor, Virginia's Uniform Commercial Code-Secured Transactions ("UCC") controls our analysis. *See* Va. Code § 8.9A-601, et seq. (2003). Section 8.9A-609 of the UCC expressly permits a secured creditor to repossess the collateral protecting its security interest after default by the debtor. Upon repossession, Virginia's UCC grants the secured creditor a number of important rights. Here, for example, once Tidewater Finance repossessed Moffett's vehicle, it was permitted to dispose of the vehicle under certain conditions. *See id.* § 8.9A-610.

At the same time, however, the UCC grants certain rights to the debtor upon repossession and otherwise imposes duties on a secured creditor in possession of collateral. Most importantly for purposes of this case, § 8.9A-623(c)(2) of the UCC granted Moffett the right to redeem the vehicle at any time before Tidewater Finance disposed of it. This right of redemption was further protected by a duty imposed on Tidewater Finance to notify Moffett of any planned disposition, at least ten days prior to disposing of the vehicle. *See id.* §§ 8.9A-611, 8.9A-612. Indeed, Tidewater Finance was even required to advise Moffett of her right of redemption. *See id.* § 8.9A-614. Moffett was also entitled to any surplus amount that the secured creditor made in excess of its interest in the collateral. *See id.* § 8.9A-615(d). Furthermore, the UCC makes clear that Moffett's rights of redemption, notification, and surplus — among other rights — are not extinguished until Tidewater Finance disposes of the repossessed vehicle under § 8.9A-610 or itself accepts the collateral under § 8.9A-620 of the UCC. *See id.* § 8.9A-617. Since Tidewater Finance has not taken any steps to dispose of the vehicle, Moffett still possessed these rights when she filed for bankruptcy.

These interests, and particularly the statutory right of redemption, are unquestionably "legal or equitable interests" of Moffett's that are included within her bankruptcy estate. *See* 11 U.S.C. § 541(a)(1). As the Supreme Court observed in *Whiting Pools*, Congress broadly defined the property of the estate in § 541(a)(1) to include all tangible and intangible property interests of the debtor. *See* 462 U.S. at 204-05

and n.9 (quoting legislative history); *see also Black's Law Dictionary* 1234 (7th ed. 1999) (defining "property of the estate" to include "the debtor's tangible and intangible property interests (including both legal and equitable interests)"). Indeed, the *Whiting Pools* Court expressly stated that "interests in [repossessed] property that could have been exercised by the debtor — in this case, the rights to notice and the surplus from a tax sale — are already part of the estate by virtue of § 541(a)(1)." 462 U.S. at 207 n.15 (internal citation omitted).

Consequently, Moffett's statutory right to redeem the vehicle was properly made part of her bankruptcy estate under 11 U.S.C. § 541(a)(1). *Accord Charles R. Hall Motors, Inc. v. Lewis* (*In re Lewis*), 137 F.3d 1280, 1284 (11th Cir. 1998) (holding that a statutory right of redemption under Alabama's UCC is part of a debtor's bankruptcy estate); *see also Bell-Tel Fed. Credit Union v. Kalter* (*In re Kalter*), 292 F.3d 1350, 1355-56 and n.4 (11th Cir. 2002) (following *Lewis* when interpreting Florida's UCC).

B.

We consider next whether Moffett's right to redeem the repossessed vehicle was sufficient to subject Tidewater Finance to the automatic stay and turnover provisions of the Bankruptcy Code. The bankruptcy court found that Moffett's reorganization plan proposes to exercise her right of redemption. Consequently, the court held that Tidewater Finance's security interest was adequately protected and that it must return the vehicle to Moffett.

We agree. Section 8.9A-623(b) of Virginia's UCC permits a debtor to redeem collateral by tendering fulfillment of all obligations secured by the collateral, as well as reasonable expenses from repossessing and holding the collateral. As the bankruptcy court found, Moffett's modified reorganization plan facilitates the exercise of this right of redemption by tendering to Tidewater Finance the full amount due under the contract.

Specifically, the modified plan requires Moffett to make the same monthly installment payments contemplated in the purchase agreement directly to Tidewater Finance, and it provides for the trustee to cure the existing delinquency with payments made over the course of

the plan. The estate must pay all applicable interest from the delinquent payments. Moreover, the vehicle is insured. Moffett has now begun to make payments pursuant to the reorganization plan.

It is true that Moffett's reorganization plan does not provide for a lump sum payment of all outstanding debts. However, even if the purchase agreement and § 8.9A-623 of the UCC require such acceleration of her debts upon default, the Bankruptcy Code entitles Moffett to restructure the timing of her payments in order to facilitate the exercise of her right of redemption. Section 1322(b)(2) of the Bankruptcy Code permits debtors to modify the rights of holders of secured claims. Section 1322(b)(3) also allows debtors to cure their defaults. Courts have recognized that the Bankruptcy Code permits debtors to restructure the timing of payments to secured creditors by de-accelerating debts, in order to allow debtors to regain collateral necessary to their financial recuperation. *See, e.g.*, *In re Robinson*, 285 B.R. 732, 738-39 (Bankr. W.D. Okla. 2002) (permitting a debtor to de-accelerate debts and redeem a repossessed vehicle with full repayment over the course of the bankruptcy plan); *Anderson v. Assocs. Commercial Corp.* (*In re Anderson*), 29 B.R. 563, 565-66 (Bankr. E.D. Va. 1983) (allowing a debtor to de-accelerate debts and redeem a repossessed tractor by promising full payment over the course of the bankruptcy plan). Pursuant to these powers, the bankruptcy plan here provided for the payment of all future installments, the curing of all delinquent payments, and the payment of all applicable interest, over the course of the plan. Such a flexible approach to repaying claims is precisely what the Bankruptcy Code allows in order to facilitate a debtor's successful rehabilitation. *Id.* at 565.

Moffett's right to redeem the vehicle is being exercised in the bankruptcy estate, and Tidewater Finance's security interest is thus adequately protected. For these reasons, we find that the bankruptcy court was correct in ordering Tidewater Finance to turn over the vehicle to Moffett. *See id.* at 565-66 (holding repossessed collateral subject to turnover upon the exercise of a debtor's right of redemption in the reorganization plan); *see also Bell-Tel Fed. Credit Union v. Kalter* (*In re Kalter*), 292 F.3d 1350, 1355-56 and n.4 (11th Cir. 2002) (holding that, under Florida law, a debtor can exercise his right to redeem a repossessed vehicle by tendering the full amount due in the reorganization plan); *Charles R. Hall Motors, Inc. v. Lewis* (*In re*

*Lewis*), 137 F.3d 1280, 1284-85 (11th Cir. 1998) (holding that, under Alabama law, a debtor's right of redemption is part of the bankruptcy estate, but that in order to redeem the repossessed vehicle the debtor must tender the full amount due in the reorganization plan).

### III.

Aside from the question whether Tidewater Finance had to turn over the vehicle as a result of Moffett's exercise of her right of redemption, the parties have presented the Court with extensive arguments concerning who holds legal ownership of the repossessed vehicle under Virginia law. This question is significant, as it determines whether Moffett had a legal as well as an equitable interest in the repossessed vehicle that became part of her bankruptcy estate.

For example, if Moffett retained ownership of the repossessed vehicle under Virginia law, then the vehicle would automatically become part of her estate. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205-06, 209-10 (1983). In such a case, there would be no need for her to exercise her right of redemption in order to bring the vehicle within the estate.

On the other hand, if Virginia law operated to transfer ownership from Moffett to Tidewater Finance immediately upon repossession, then Moffett's bankruptcy estate would automatically include *only* her statutory rights in the repossessed vehicle. *See id.* at 207 n. 15, 209-10. In that event, the only way for Moffett to regain possession of the vehicle would be to exercise her right of redemption. *See Lewis*, 137 F.3d at 1284-85; *Kalter*, 292 F.3d at 1353, 1355-56 and n.4.

We need not resolve this question here, however. As we have held, Virginia law at least provides Moffett a right to redeem her vehicle after repossession. Even if Virginia law otherwise transfers legal ownership of the vehicle to Tidewater Finance upon repossession — a question we do not decide — this transfer cannot be construed as severing Moffett's interests in the vehicle provided by the UCC. Her right of redemption is unquestionably part of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1). Moffett proposes to exercise her right to redeem the vehicle in her reorganization plan, thus making the vehicle

subject to the Bankruptcy Code's automatic stay and turnover provisions.

We hold then that the bankruptcy and district courts properly ordered the vehicle returned to Moffett. The Bankruptcy Code was designed to facilitate the financial rehabilitation of debtors. *See Whiting Pools*, 462 U.S. at 203-04, 208. The bankruptcy court's orders here accomplish precisely that by returning to Moffett her sole means of transportation to work, while at the same time fully protecting the interests of her creditor. Accordingly, the judgment of the district court is

*AFFIRMED*.