ELECTRONIC CITATION:  2006 FED App. 0005P (6th Cir.)
File Name:  06b0005p.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | |
|---|---|
| In re:   LAQUITA CURRY, | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| TIDEWATER FINANCE COMPANY, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| | ) |
| v. | )   No. 05-8083 |
| | ) |
| LAQUITA CURRY, | ) |
| | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Western Division at Dayton
Case No. 05-36056

Argued:  May 3, 2006

Decided and Filed:  August 10, 2006

Before: GREGG, PARSONS, and WHIPPLE, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:**  James R. Sheeran, Chesapeake, Virginia, for Appellant.  Jeffrey R. McQuiston, SKELTON, McQUISTON, GOURNARIS & HENRY, Dayton, Ohio, for Appellee. **ON BRIEF:** James R. Sheeran, Chesapeake, Virginia, for Appellant.  Jeffrey R. McQuiston, SKELTON, McQUISTON, GOURNARIS & HENRY, Dayton, Ohio, Scott G. Stout, Dayton, Ohio, for Appellee.

_____

**OPINION**

_____

JAMES D. GREGG, Bankruptcy Appellate Panel Judge. Tidewater Finance Company ("Tidewater") appeals the bankruptcy court's order denying its motion to terminate the automatic stay to sell a repossessed motor vehicle and overruling its objection to confirmation of the chapter 13 plan proposed by Laquita Curry ("Debtor") based on the plan's "cram down" treatment of its claim secured by the vehicle. The bankruptcy court rejected Tidewater's argument that its prepetition repossession of the Debtor's vehicle changed the parties' respective property rights, thereby prohibiting modification and "cram down" of Tidewater's secured claim. For the reasons that follow, the bankruptcy court's order is AFFIRMED.

## I. ISSUE ON APPEAL

Must a chapter 13 debtor whose vehicle has been repossessed prepetition pay a secured creditor the full redemption value otherwise required by state law to adequately protect the secured creditor's interest and regain possession of the vehicle?

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to this Panel and a final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). The bankruptcy court's order denying relief from the automatic stay is a final, appealable order. *Nat'l City Bank v. Elliott (In re Elliott)*, 214 B.R. 148, 149 (B.A.P. 6th Cir. 1997). The order confirming the Debtor's chapter 13 plan over Tidewater's objection is also a final order for purposes of appeal. *See Schory & Sons, Inc. v. Francis (In re Francis)*, 273 B.R. 87, 89 (B.A.P. 6th Cir. 2002); *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998).

Because the parties to this appeal have stipulated to the facts underlying this dispute, the appeal presents only legal questions. A bankruptcy court's conclusions of law are reviewed de novo. *Adell v. John Richards Homes Bldg. Co. (In re John Richards Home Bldg. Co.)*, 439 F.3d 248, 254 (6th Cir. 2006); *In re Downs*, 103 F.3d 472, 476-77 (6th Cir. 1996). "De novo review means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).

## III.   FACTS

The underlying facts are undisputed. On January 6, 2004, the Debtor purchased a 2000 Saturn SL from Jeff Wyler Chevrolet, Inc. in Batavia, Ohio pursuant to the terms of a Retail Installment Contract and Security Agreement ("Contract") that obligated her to pay $10,888.20 with annual interest of 21.95% in 60 monthly installments. The vehicle was the collateral that secured the Debtor's obligation under the Contract. The Contract was subsequently assigned to Tidewater and its security interest was duly perfected.

After the Debtor defaulted on her required monthly payments, Tidewater lawfully repossessed the vehicle on May 25, 2005. The Debtor then filed her chapter 13 petition and plan and demanded that Tidewater return the vehicle to her possession. As of the petition date, June 17, 2005, Tidewater had not obtained a Certificate of Title to the vehicle or disposed of the vehicle. The accelerated balance owed pursuant to the Contract as of the filing of the chapter 13 petition was $10,718.83, which included $10,008.88 in principal, $300.95 in accrued interest, $9.00 in late fees, and $400.00 in repossession fees.

The Debtor did not reinstate the Contract or redeem the vehicle under Ohio law in her plan. Rather, the Debtor proposed a "cram down."[1] The plan valued the vehicle and Tidewater's secured

---

[1] "Cram down" is a bankruptcy term used when a plan is confirmed over a claim holder's objection. Kenneth N. Klee, *All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code*, 53 Am. Bankr. L.J. 133 (1979); *Till v. SCS Credit Corp.*, 541 U.S. 465, 468-69, 124 S. Ct. 1951, 1954 (2004) (recognizing the "cramdown" option in a chapter 13 case that is exercised "by providing the creditor both a lien securing the claim and a promise of future property distributions (such as deferred cash payments) whose total 'value, as of the effective date of the plan, . . . is not less than the allowed amount of such claim'"). Often, in such situations, a secured creditor's claim is bifurcated such that it is treated as secured to the extent of the value of the collateral, with the balance of the claim treated as an unsecured claim, *see Americredit Fin. Servs.,*

-3-

claim at $6,700 and proposed to pay that amount with interest at 7.3%. The remainder of the balance owed under the Contract was treated as an unsecured claim to be paid a 9% distribution without interest. As of the petition date, the NADA[2] retail value of the vehicle was $7,875 and the trade in value was $6,200.

Tidewater filed a Motion to Terminate the Automatic Stay ("Motion") and objected to confirmation of the Debtor's chapter 13 plan ("Objection"). Both the Motion and the Objection were based on Tidewater's argument that its prepetition repossession of the Debtor's vehicle changed the parties' property rights in the vehicle. Tidewater asserted that its secured claim was not subject to modification and "cram down." The bankruptcy court rejected Tidewater's arguments, overruled its Objection, and denied its Motion. This timely appeal followed.

## IV.   DISCUSSION

Pursuant to Article 9 of the Uniform Commercial Code ("UCC") as enacted by Ohio, Tidewater lawfully repossessed the Debtor's vehicle when she defaulted on her obligations under the Contract. *See* Ohio Rev. Code Ann. § 1309.609. The Debtor then had the option of redeeming the vehicle by tendering fulfillment of all obligations owed under the Contract, including fees and repossession costs. *See* Ohio Rev. Code Ann. § 1309.623. While Tidewater concedes that under Ohio law the Debtor retained an interest in the vehicle after repossession, it argues that the competing interests of the Debtor and Tidewater in the vehicle were fixed by Ohio law at the time of repossession. Tidewater further argues that the United States Supreme Court's holding in *Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914 (1979), requires that its rights be treated in bankruptcy uniformly with the treatment that its rights would receive under Ohio UCC law. Tidewater frames its appeal as follows: "[T]his case is not an ownership dispute - it is a uniform treatment and adequate protection controversy." (Appellant Br. at 8.) According to Tidewater, its possessory interest in the vehicle is equal to the state law redemption value of $10,718.83, the full amount owed to it. Tidewater contends, therefore, that to adequately protect its interest and regain possession of

---

*Inc. v. Nichols (In re Nichols)*, 440 F.3d 850 (6th Cir. 2006), notwithstanding that this would be impermissible under state law.

[2] A commercial publication commonly used to value vehicles. Fed. R. Evid. 802(17) and 902.

the vehicle, the Debtor's sole option is to exercise her state law right of redemption. According to Tidewater, the Debtor has no ability to "cram down" its claim through chapter 13.

Contrary to Tidewater's assertions, *Butner* does not dictate the result Tidewater seeks. The bankruptcy estate that is created upon the filing of a petition consists of all legal and equitable interest in property held by the debtor at the time of filing, wherever that property is located and by whomever it is held. 11 U.S.C. § 541(a).[3] When disputes over whether property is included in the estate arise, the bankruptcy court will determine the status and nature of the debtor's ownership or interest in the disputed property under applicable non-bankruptcy law, often state law, as of the time the bankruptcy petition was filed. *Butner*, 440 U.S. at 54-55. If a debtor has an interest in the property under non-bankruptcy law, the court must then determine whether the interest is included in the estate utilizing federal bankruptcy law. *Id.*; *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S. Ct. 2309, 2313 (1983).

In *Butner*, the Supreme Court considered whether a security interest in real property, including rents and profits, should be governed by state or federal law. Although the Court recognized that Congress' constitutional authority to establish "'uniform Laws on the subject of Bankruptcies throughout the United States' would clearly encompass a federal statute defining the mortgagee's interest in the rents and profits earned by property in a bankrupt estate," it found that Congress had not exercised its power to fashion such a rule. *Butner*, 440 U.S. at 54. The Court then explained that, generally, "[p]roperty interests are created and defined by state law" and that "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* at 55. The Court further explained that "[u]niform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to

---

[3] This section of the Bankruptcy Code, along with numerous others, was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA" or "the Act"), effective October 17, 2005. Because the Debtor's bankruptcy case was filed before the effective date of the Act, all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1501(b)(1), 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under title 11 before the effective date of the Act).

prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Id*. (citation omitted).

Tidewater argues that if the Debtor bifurcates its claim and "crams down" its interest in the vehicle to anything less than the full amount due under the Contract, the Debtor will have obtained nonuniform treatment of her interest. However, *Butner* requires that when an actual conflict exists between state laws and bankruptcy laws enacted by Congress, the state laws are suspended. *Id.* at 54 n.9 (citations omitted.) In this instance, the Ohio UCC redemption provision conflicts with the Bankruptcy Code, and Tidewater's argument that Ohio law governs fails.

The Bankruptcy Code requires any entity in "possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363" to deliver such property to the trustee. 11 U.S.C. § 542(a). The Bankruptcy Code also permits a trustee to "use, sell, or lease . . . property of the estate." 11 U.S.C. § 363. Thus, if the vehicle is property of the estate, §§ 363 and 542(a) provide the Debtor with the right of possession. *See* 11 U.S.C. § 1303 (providing that "debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l), of this title"); *Whiting Pools, Inc.*, 462 U.S. at 207 ("In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings."). Further, a debtor is permitted to modify the rights of holders of secured claims, other than those secured solely by a security interest in real property that is the debtor's residence. *See* 11 U.S.C. § 1322(b)(2). Therefore, the Ohio UCC law that requires the Debtor to redeem, by paying the full amount due under the accelerated Contract to regain possession of the vehicle, conflicts with the Bankruptcy Code.

The first analysis to be conducted under *Butner,* determination of ownership rights under non-bankruptcy law, has been addressed by the Supreme Court in *Whiting Pools.* In that case, the IRS seized a chapter 11 debtor's personal property pursuant to a tax levy before the debtor filed his bankruptcy petition. Although the IRS possessed the property, it had not been sold. The IRS asserted that the bankruptcy estate was not entitled to possession of the property because the levy was complete before the petition was filed. Therefore, according to the IRS, the debtor had no interest in the property. Considering the interplay between the definition of the bankruptcy estate, 11 U.S.C. § 541(a)(1), and the turnover provisions, 11 U.S.C. § 542(a), the Court explained that

"[a]lthough these statutes could be read to limit the estate to those 'interests of the debtor in property' at the time of the filing of the petition, we view them as a definition of what is included in the estate, rather than as a limitation." *Whiting Pools*, 462 U.S. at 203. Given the broad scope of the statute, the Court concluded that "§ 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code" and § 542(a) is such a provision. *Id.* at 205. While there are limitations on the reach of § 542(a), the Court further explained that "none requires that the debtor hold a possessory interest in the property at the commencement of the reorganization proceedings." *Id*. at 206.

The Court then examined the enforcement provisions of the Internal Revenue Code to determine whether ownership of the property was transferred to the IRS upon seizure. While it acknowledged that § 542(a) may not apply if *ownership* was transferred to the IRS upon seizure, the Court held that the enforcement provisions of the Internal Revenue Code do not provide for transfer of ownership of the property until it is sold at a tax sale. *Id*. at 210. Therefore, the seized property was property of the estate and subject to the turnover requirements of § 542(a). *Id.* at 211.[4] And in return, "[t]he [creditor], under § 363(e), remains entitled to adequate protection for its interests . . . . Section 542(a) simply requires the [creditor] to seek protection of its interest according to the congressionally established bankruptcy procedures . . . ." *Id.* at 211-12.

---

[4] We recognize that the Supreme Court limited application of its holding to chapter 11 cases. *Whiting Pools*, 462 U.S. at 208 n.17. ("Section 542(a) also governs turnovers in liquidation and individual adjustment of debt proceedings under Chapters 7 and 13 of the Bankruptcy Code . . . . Our analysis in this case depends in part on the reorganization context in which the turnover is sought. We express no view on the issue whether § 542(a) has the same broad effect in . . . adjustment of debt proceedings."). However, because the definition of the "estate" is broader in chapter 13 than in chapter 11, *see* 11 U.S.C. § 1306, there is no meaningful distinction between chapter 11 and chapter 13 cases insofar as the *Whiting Pools* holding is concerned. Numerous courts have applied the *Whiting Pools* analysis to chapter 13 cases. *See, e.g. Tidewater Finance Co. v. Moffett (In re Moffett)*, 356 F.3d 518 (4th Cir. 2004) (citing *Whiting Pools* in Chapter 13 context); *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280, 1285 (11th Cir. 1998) (citing *Whiting Pools* in chapter 13 context); *Nat'l City Bank v. Elliott (In re Elliott)*, 214 B.R. 148, 151-52 (B.A.P. 6th Cir. 1997) (applying *Whiting Pools* analysis to chapter 13 case); *In re Robinson*, 285 B.R. 732, 735 (Bankr. W.D. Okla. 2002) (concurring with other courts that have interpreted *Whiting Pools* to apply in a chapter 13 context); *Sutton v. Ford Motor Credit Co. (In re Sutton)*, 87 B.R. 46, 49 n.1 (Bankr. S.D. Ohio 1988) (holding that *Whiting Pools* is equally applicable to chapter 13 cases).

The Supreme Court's holding in *Whiting Pools* undercuts Tidewater's argument. Once a debtor's interest in the repossessed vehicle is determined by state law, the rights and remedies provided to secured creditors and chapter 13 debtors by the Bankruptcy Code govern. Under the Bankruptcy Code, Tidewater's possessory interest in the vehicle is replaced by its right to adequate protection. *See Whiting Pools*, 462 U.S. at 207; *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 683 (B.A.P. 6th Cir. 1999). Tidewater attempts to distinguish *Whiting Pools* by asserting that the holding is limited to cases in which the IRS is the secured creditor and seizure occurred under the Internal Revenue Code. However, the Court did not so constrain its holding. The Court specifically stated, "[w]e see no reason why a different result should obtain when the IRS is the creditor." *Whiting Pools*, 462 U.S. at 209. Tidewater offers no persuasive reason why the *Whiting Pools* holding is not generally applicable to all secured creditors. A vehicle repossessed under Ohio law before commencement of a bankruptcy case, which has not been sold or otherwise disposed of, is property of the bankruptcy estate. *See In re Sharon*, 234 B.R. at 682 (determining that "possession of the Debtor's car was part of the bundle of rights that became 'property of the estate'"); *Nat'l City Bank v. Elliott (In re Elliott)*, 214 B.R 148, 152 (B.A.P. 6th Cir. 1997) (stating that the vehicle was property of the estate, notwithstanding the fact that secured creditor obtained repossession title, because under Ohio law ownership does not transfer until vehicle is sold).

In *Elliott*, the creditor repossessed the vehicle and, pursuant to Ohio's version of the UCC, obtained a "repossession title" in its name. Because the vehicle had not yet been sold, the Ohio UCC provided the debtors with a statutory right of redemption. The creditor argued that the statutory privilege of redemption did not confer upon the debtors any interest in the vehicle; instead the prepetition repossession entitled the creditor to a transfer of ownership pursuant to Ohio Rev. Code Ann. § 4505.10(A). As such, according to the creditor, the vehicle was not property of the estate.

The Bankruptcy Appellate Panel, however, recognized that "[u]nder Ohio law, a change of vehicle ownership is not consummated until the certificate of title is issued in the name of the purchaser." *In re Elliott*, 214 B.R. at 150 (citing *Rockwell v. Thomas*, 116 Ohio App. 544, 189 N.E.2d 168 (1962)). The Panel further noted "[n]either possession nor title are alone determinative of whether an interest constitutes property of the estate under § 541 . . . . " *Id*. at 151 (citing, *inter alia, In re Gunder*, 8 B.R. 390, 392-93 (Bankr. S.D. Ohio 1980) and *Jackson v. GMAC (In re Jackson)*, 142 B.R. 172 (Bankr. N.D. Ohio 1992)). Relying on the foregoing principles and citing

*Whiting Pools*, the Panel concluded, "[i]t is only after the disposition that the debtor loses all interest in the property and full ownership vests in a third party." *Id*. at 152. Accordingly, the Panel held that the vehicle was property of the estate and subject to turnover. *Id.*

Here, Tidewater did not sell or dispose of the Debtor's vehicle. Nevertheless, Tidewater argues that the Bankruptcy Appellate Panel decisions in *Sharon* and *Elliott* are erroneous in that "they overlook the critical fact that the debtor lost the right to possess the vehicle unless he or she exercises the right to redeem it" as provided under state law. (Appellant Br. at 15.) However, in accordance with *Whiting Pools*, § 542(a) grants to the estate a possessory interest in the repossessed collateral and, as discussed previously, to the extent Ohio law conflicts with the Bankruptcy Code, the Ohio statutory provisions are suspended. Thus, the Debtor's bankruptcy right to regain possession of the vehicle is a result of federal law under § 542(a), not the Ohio redemption statute. Accordingly, the Debtor's vehicle is property of her bankruptcy estate.

Because the vehicle is property of the Debtor's bankruptcy estate, the automatic stay provisions of 11 U.S.C. § 362(a) apply. *In re Sharon*, 234 B.R. at 682. However, at Tidewater's insistence as a secured creditor, the Debtor must provide adequate protection of Tidewater's interest in the property. *See* 11 U.S.C. § 363(e); *Whiting Pools*, 462 U.S. at 204; *Volvo Commercial Fin. LLC v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.)*, 326 B.R. 683, 691 (B.A.P. 6th Cir. 2005) (Gregg, J., concurring). Without citing any authority, Tidewater argues that its repossession conferred on it a "heightened interest" in the collateral, the value of which exceeds its allowed secured claim and equals the amount necessary to redeem the vehicle. Therefore, according to Tidewater, adequate protection of its interest can be provided only by tender of the full redemption value pursuant to state law. However, because disposition of the vehicle "is the cut off point of a Chapter 13 debtor's power to modify a secured creditor's claim under § 1322(b)(2) of the Bankruptcy Code," and Tidewater has not yet disposed of the vehicle, § 1322(b)(2) remains available to the Debtor. *See In re Elliott*, 214 B.R. at 152-53 (rejecting creditor's argument that debtor's plan must provide for payment in lump sum, as required by Ohio law, based upon power to modify secured creditor's claim). Just as the Debtor lost the right of possession to her vehicle prior to her chapter 13 petition and outside of bankruptcy could not have regained possession without redeeming the vehicle through payment in full, the debtor in *Whiting Pools* lost the right of possession by virtue of the IRS seizure prior to filing its bankruptcy petition and outside of bankruptcy could not have

regained possession except by tendering payment in full, much like redeeming the collateral under the UCC. *See* 26 U.S.C. § 6337(a).[5] However, despite the Internal Revenue Code's requirement of full payment of all obligations owed to regain possession, the Supreme Court's opinion in *Whiting Pools* is conspicuously silent on any requirement that a debtor must make full payment in a reorganization plan. Rather, in *Whiting Pools* the Court held that bankruptcy law gives the debtor a right of possession enforceable by turnover under § 542(a) and the Bankruptcy Code replaces the protection afforded to secured creditors by possession with other rights such as adequate protection. *Whiting Pools*, 462 U.S. at 207. The Ohio UCC permits repossession and eventual sale of a debtor's vehicle as the procedural mechanism to foreclose and satisfy a security interest. Contrary to Tidewater's assertions, this procedural remedy does not change the parties' substantive rights. Only the diminution of the value of the collateral is entitled to protection. *Whiting Pools,* 462 U.S. at 210-11; *In re Balderas*, 328 B.R. 707, 720 (Bankr. W.D. Tex. 2005).

In support of its tenuous argument that payment of the full redemption value is the sole method to adequately protect its interest, Tidewater relies upon the distinguishable decisions of the Eleventh Circuit Court of Appeals in *Bell-Tel Fed. Credit Union v. Kalter (In re Kalter)*, 292 F.3d 1350 (11th Cir. 2002) and *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280 (11th Cir. 1998). In *Kalter* and *Lewis*, applying Florida and Alabama law respectively, the Eleventh Circuit determined that ownership of the vehicles immediately transferred to the creditors upon repossession; therefore, the debtor's only interest in the vehicle was a bare right of redemption. *In re Kalter*, 292 F.3d at 1360; *In re Lewis*, 137 F.3d at 1284. Relying on state law, the Eleventh Circuit held that turnover was inappropriate because the debtors' chapter 13 plans failed to redeem their vehicles. *In re Kalter*, 292 F.3d at 1356; *In re Lewis*, 137 F.3d at 1285.

Tidewater's reliance upon *Kalter* is misplaced. Ohio law, unlike Florida law, does not provide for immediate transfer of full ownership until disposition, usually repossession sale, of the

---

[5] This section of the Internal Revenue Code provides that:

Any person whose property has been levied upon shall have the right to pay the amount due, together with the expenses of the proceeding, if any, to the Secretary at any time prior to the sale thereof, and upon such payment the Secretary shall restore such property to him, and all further proceedings in connection with the levy on such property shall cease from the time of such payment.

26 U.S.C. § 6337(a).

vehicle. As the Eleventh Circuit later recognized in *Motors Acceptance Corp. v. Rozier (In re Rozier)*, 376 F.3d 1323, 1324 (11th Cir. 2004), the result is governed by applicable state law. In *Rozier*, the Eleventh Circuit certified the question of ownership to the Georgia Supreme Court which held that, under Georgia law, ownership does not pass to the creditor upon repossession alone. *Id.* at 1324; *Motors Acceptance Corp. v. Rozier*, 597 S.E.2d 367, 368 (Ga. 2004). Consistent with the answer to its certified question, the Eleventh Circuit held that because ownership did not transfer upon repossession under Georgia law, the debtor's vehicle was property of the estate. *In re Rozier*, 376 F.3d at 1324.

In *Kalter*, the Eleventh Circuit Court of Appeals examined Florida's UCC and certificate of title statute to determine whether a Florida debtor whose car is repossessed prepetition retains ownership of the vehicle. Because the court found no language in the UCC addressing title, transfer of title, or ownership of repossessed collateral, thereby restricting case law interpreting the statute, it concluded that the Florida UCC provided no guidance as to who owns the vehicle upon repossession. *In re Kalter*, 292 F.3d at 1354-56. However, the Eleventh Circuit held that the Florida certificate of title statute, Fla. Stat. § 319.28, expressly mandated that ownership transfers upon repossession. The court relied upon language stating that a repossessing creditor may submit an affidavit "announcing the repossession as 'proof of ownership.'" *Id*. at 1357-58.

In contrast to Florida law, as noted by the court in *Sutton v. Ford Motor Credit Co. (In re Sutton)*, 87 B.R. 46, 48 (Bankr. S.D. Ohio 1988), Ohio's certificate of title statute, Ohio Rev. Code Ann. § 4505.10, explicitly refers to the Article 9 provisions of the governing Ohio law. "Ohio Rev. Code § 4505.10 contemplates a 'completion' of the repossession procedure under state law, wherein a debtor's rights to redeem . . . may be cut off, before ownership of a motor vehicle is transferred by operation of law." *Id.* Unlike Ohio's certificate of title statute, Florida's statute makes no reference to Florida's version of the UCC. The *Kalter* court lacked case law interpreting the Florida UCC as guidance. *In re Kalter*, 292 F.3d at 1356. In contrast, the Sixth Circuit Bankruptcy Appellate Panel relied upon prior Ohio case law to interpret the applicable provisions of the Ohio UCC. *See In re Elliott*, 214 B.R. at 151. In *Smith v. Acceleration Life Ins. Co.*, 446 N.E.2d 855, 859 (Ohio App. 1982), an Ohio appeals court held that a debtor's insurable interest in collateral "is extinguished, at the earliest, by the expiration of his right to retain possession of the collateral under [the right to

redeem]. Only at this point in time is the secured creditor-beneficiary in a position to assert full control over the collateral and subject the value of the collateral to the payment of the debt."

In addition, because the Eleventh Circuit in *Kalter* rejected the Florida UCC as determinative of the issue, it dismissed several of the debtor's arguments. One of the rejected arguments was that a provision of the Florida UCC, *Fla. Stat.* § 679.504 (now *Fla. Stat.* § 679.617), established that ownership of the repossessed collateral remained with the debtor because it stated that when the secured party sells the collateral to a purchaser, "all of the debtor's rights therein" pass to the purchaser. Based on the then broad definition of "debtor" in the Florida statute, the court concluded that the term "debtor," as used in the statute, could encompass either the debtor or the creditor in possession of the collateral. *In re Kalter*, 292 F.3d at 1354-55. However, the definition of debtor in both the Florida UCC and the Ohio UCC has been amended to read a "person having an interest, *other than a security interest . . . .*" The Official Comments make it clear that "[s]ecured parties and other lienholders are excluded from the definition of 'debtor' . . . ." Ohio Rev. Code Ann. § 1309.102; Fla. Stat. § 679.1021 (emphasis added). Because the purchaser of the collateral obtains ownership of the collateral, it follows that this was one of the debtor's rights at the time the creditor sold it, mandating the conclusion that ownership does not transfer upon repossession alone.

Moreover, effective July 1, 2001, Ohio enacted a new provision which clarifies that the Ohio Certificate of Title statute, Ohio Rev. Code Ann. § 4505.10, does not alter the substantive rights of a debtor and a secured creditor in Ohio and is not determinative of the issues here. *See* Ohio Rev. Code Ann. § 1309.619. Section 1309.619, entitled "Transfer of record of legal title," recognizes that the debtor's ownership does not cease until the vehicle is disposed of by the creditor. In pertinent part, it states that the transfer of legal title to collateral to a secured party "is not of itself a disposition of collateral under this chapter and does not of itself relieve the secured party of its duties under this chapter." *Id*. Clarifying the issue, the official comment states, "A secured party who has obtained . . . legal title retains its duties . . . and the debtor retains its rights as well." Ohio Rev. Code Ann. § 1309.619 Official cmts. 2 (2000). Section 1309.619 was effective prior to the date of the repossession at issue, and there is no question that the Debtor retained ownership of the vehicle.

Tidewater's reliance upon *Lewis* is also misplaced. In that case, the Eleventh Circuit determined, notwithstanding the Alabama UCC effective in 1965, that Alabama continued to rely

on the common law of conversion without reconciling the import of the Alabama UCC. The common law of conversion requires that upon a debtor's default, title and right of possession pass to the creditor. *In re Lewis*, 137 F.3d at 1283-84. The common law of conversion was not addressed in *Elliott,* and Ohio's state courts have relied upon the UCC rather than common law conversion.

Tidewater also advances a Fourth Circuit Court of Appeals case, in which it was a party, in support of its arguments. *Tidewater Finance Co. v. Moffett (In re Moffett)*, 356 F.3d 518 (4th Cir. 2004). The facts in *Moffett* are similar to this case. Tidewater repossessed the debtor's vehicle before the filing of her chapter 13 petition. When the debtor demanded the vehicle be returned, Tidewater responded by requesting relief from stay. Tidewater argued that its repossession stripped the debtor and the bankruptcy estate of any interest in the vehicle except bare legal title and an intangible right of redemption. The Fourth Circuit recognized that the issue concerning who holds legal ownership of the repossessed vehicle under Virginia law was "significant, as it determines whether Moffett had a legal as well as an equitable interest in the repossessed vehicle that became part of her bankruptcy estate." *Id.* at 523. Citing *Whiting Pools*, the Fourth Circuit then explained that "if Moffett retained ownership of the repossessed vehicle under Virginia law, then the vehicle would automatically become part of her estate. In such a case, there would be no need for her to exercise her right of redemption in order to bring the vehicle within the estate." *Id*. at 524 (citation omitted). However, because the debtor's chapter 13 plan proposed to exercise her right to redeem the vehicle as provided for by Virginia state law, the Fourth Circuit did not address and determine the issue of ownership of the vehicle and whether it was necessary for the debtor to exercise her right of redemption to bring the vehicle into the estate. Therefore, contrary to Tidewater's argument, *Moffett* is not persuasive authority in the instant case.

Summarizing, pursuant to Ohio law, the Debtor in this case retained ownership of her vehicle notwithstanding repossession by Tidewater. Therefore, the Debtor's vehicle is property of her bankruptcy estate and subject to turnover to her. The Debtor may provide adequate protection as requested by Tidewater through a plan in which Tidewater is paid the value of its collateral. *See In re Howard*, 212 B.R. 864, 876 (Bankr. E.D. Tenn. 1997) (explaining that the value of collateral is "the source and limit of the secured creditors' right to adequate protection"). Any plan must satisfy the chapter 13 confirmation standards. As the Debtor is not surrendering the vehicle, any plan must provide that Tidewater retain its lien and that the value paid under the plan is not less than the

allowed amount of Tidewater's claim. *See* 11 U.S.C. § 1325(a)(5). The amount of Tidewater's allowed secured claim is determined by 11 U.S.C. § 506(a), which provides that a claim is secured "to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . . ." 11 U.S.C. § 506(a). The plan proposed by the Debtor, and confirmed by the bankruptcy court, satisfies the requirements of 11 U.S.C. § 1325 for treatment of Tidewater's allowed secured claim. Tidewater's requested relief from stay to sell the vehicle and objection to confirmation are unwarranted.

## V. CONCLUSION

The bankruptcy court's order denying Tidewater's motion to terminate the automatic stay and overruling its objection to confirmation of the chapter 13 plan is AFFIRMED.